#24231-a-JKM

**2007 SD 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

SCOT JEFFREY SANTEMA,                    Plaintiff and Appellant,

    v.

SOUTH DAKOTA BOARD OF
PARDONS AND PAROLES,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN K. CALDWELL
Judge

\* \* \* \*

MARK KADI
Minnehaha County Public Advocate    Attorneys for plaintiff
Sioux Falls, South Dakota    and appellant.

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General    Attorneys for plaintiff
Pierre, South Dakota    and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 23, 2007

OPINION FILED **06/20/07**

#24231

MEIERHENRY, Justice

[¶1.] Scot Jeffrey Santema (Santema) appeals the lower court's affirmance of his parole eligibility date calculated by the South Dakota Board of Pardons & Paroles (Board). We affirm.

**FACTS**

[¶2.] Santema has been in the custody of the Department of Corrections (Department) since 1988 on six felony convictions arising both before and after July 1, 1996. In 1988, his first three felonies resulted in sentences of three years, six years and twelve years. The twelve year sentence ran consecutive to the three and six year sentences, which ran concurrent to each other. He was paroled on the twelve year sentence in 1993. While on parole, he committed his fourth felony and was sentenced to an additional ten years in 1994. Although his parole eligibility date for the 1994 sentence was set for April 14, 1995, he was not granted parole until 2000. He subsequently violated parole and returned to prison. He was again paroled in 2003, but this parole was revoked in 2004. Although scheduled to be paroled again on July 23, 2004, his parole was rescinded because he had committed burglaries in Lincoln County and Minnehaha County while on parole. Santema pled guilty and was sentenced to twelve years for the Lincoln County burglary, to run consecutive to a ten year sentence for the Minnehaha County burglary. Based on the two new sentences, his time to serve before he became parole eligible was an additional twelve years, four months and twenty-four days. The Department calculated his parole eligibility date as December 8, 2017.

-1-

[¶3.]        Santema appealed the Department's calculation to the Board. Santema contended that his parole eligibility date should be December 2, 2006, as opposed to the December 8, 2017 date set by the Department. The difference between the Department's calculation and Santema's calculation hinged on the initial date to which the time to serve (twelve years, four months and twenty-four days) is added. Santema claimed the initial date was April 14, 1995. The Department claimed the initial date was April 20, 2006. The Board rejected Santema's argument. Santema appealed and the circuit court affirmed. Santema now appeals the circuit court decision. The issue is whether the circuit court erred in affirming the Board's application of SDCL 24-15A-19 in setting Santema's parole eligibility date. We decide the issue solely upon the language of the statute without regard to Department regulations or policy.[1]

## STANDARD OF REVIEW

[¶4.]        "An appeal from the Board is governed by SDCL 1-26-37." Austad v. South Dakota Bd. of Pardons & Paroles, 2006 SD 65, ¶8, 719 NW2d 760, 764 (citation omitted). Since the issue involves questions of law, our standard of review is de novo. *Id*.

---

1.    Santema also raised the issue of whether the Department of Corrections regulation ARSD 17:50:13:10 and Policy 1.1.E.2 violate due process and ex post facto laws. Since our holding affirms the Department's actions based upon its authority in the statute, we need not address the challenges to the regulations and policies.

## ANALYSIS

[¶5.] The statutory scheme of parole eligibility was significantly changed by the South Dakota Legislature as of July 1, 1996. Consequently, inmates sentenced to the penitentiary for crimes committed before that date were eligible for parole under a different system than those who were sentenced for crimes committed after the new system went into effect. Instances in which an inmate had to serve sentences for crimes committed before and after July 1, 1996, fell under both systems for parole eligibility. The legislature specifically addressed how to apply the dual systems in SDCL 24-15A-19. The statute provides that parole eligibility for a post-July 1, 1996, sentence "shall be calculated by adding the time to serve to initial parole on transactions occurring on or after July 1, 1996, to the parole eligibility date of the transactions occurring prior to July 1, 1996[.]" SDCL 24-15A-19. For post-1996 sentences, the "time to serve" is calculated by using the grid in SDCL 24-15A-32.

[¶6.] Santema concedes that the Board correctly calculated his "time to serve" on his post-1996 felonies (his fifth and sixth felonies) at twelve years, four months and twenty-four days. He also does not challenge how the Department determined the parole eligibility dates for the sentence on his pre-1996 felony (his fourth felony). In other words, Santema does not appear to challenge the manner of calculating his prior parole eligibility dates under the old system codified in SDCL ch. 24-15.

[¶7.] What Santema challenges are the parole eligibility dates set for his post-1996 felonies pursuant to SDCL 24-15A-19. Santema claims that the wording

of the statute requires that his "time to serve" for the post-1996 felonies (twelve years, four months and twenty-four days) be added to his *first* scheduled parole date for his pre-1996 conviction, which was April 14, 1995. The Department, Board and circuit court interpreted the statute to require that his "time to serve" be added to his *next* parole eligibility date for the pre-1996 felony. After his parole revocation, his *next* parole eligibility date was March 2005.

[¶8.]         In order to resolve this question, we must determine legislative intent. To determine legislative intent, we first examine the wording of the statute for its plain meaning. Martinmaas v. Engelmann, 2000 SD 85, ¶49, 612 NW2d 600, 611 (citations omitted). SDCL 24-15A-19 sets forth how to calculate parole when the inmate is serving sentences under both the old and new systems. It provides as follows:

> In the determination of an inmate's initial parole date, two or more convictions arising from the same transaction, for which the sentences are made to run consecutively, shall be considered as one conviction. Two or more sentences arising from different transactions for which the sentences are made to run consecutively shall be considered as separate convictions. For a person receiving two or more sentences which are made to run consecutively, time to serve to initial parole shall be calculated individually for each sentence then added to determine actual first parole date. ***In cases of different transactions, at least one occurring prior to July 1, 1996, and at least one occurring on or after July 1, 1996, time to initial parole shall be calculated by adding the time to serve to initial parole on transactions occurring on or after July 1, 1996, to the parole eligibility date of the transactions occurring prior to July 1, 1996,*** unless the subsequent transaction is a result of a crime committed as an inmate pursuant to § 24-15A-20.

SDCL 24-15A-19 (emphasis added).[2]  When the legislature directed in the statute that time to serve be added "to the parole eligibility date" of the pre-1996 felony sentence, did it mean the calculation should start from the *first* parole eligibility date or the most recent (*i.e. next*) eligibility date?

[¶9.]        In order to answer that question, a brief review of the two parole systems is helpful.  The old system contained in SDCL ch. 24-15 does not use the term "initial parole date;" it only refers to "eligibility for parole" or "eligibility for consideration for parole."  SDCL 24-15-5, -6, -7, -8.  Parole, under the old system, was defined as "the discretionary conditional release of an inmate from actual penitentiary custody before the expiration of the inmate's term of imprisonment."  SDCL 24-15-1.1.  An inmate was "not required to accept a conditional parole" nor was he "entitled" to it.  *Id.*  An inmate was not eligible for parole until he served a certain portion of his sentence.  SDCL 24-15-5.  Once that portion of his sentence

---

2.    The 2007 South Dakota Legislature added the following provision to SDCL 24-15A-19 effective July 1, 2007, that further defines parole eligibility as the "date the inmate is next eligible for a parole hearing based on transactions with a discretionary date."  The amendment reads as follows:

> In cases of different transactions, where at least one transaction has a discretionary parole date as a result of a parole revocation pursuant to § 24-15-24, § 24-15A-29, or as a result of noncompliance pursuant to § 24-15A-39, and at least one transaction has an initial parole date pursuant to § 24-15A-32, time to initial parole shall be calculated by adding the time to serve to parole on transactions with an initial parole date to the parole eligibility date on transactions with a discretionary date.  Parole eligibility as used in this section is the date the inmate is next eligible for a parole hearing based on transactions with a discretionary date.

2007 SD Sess L ch 153, § 1.

had been served, the inmate was called before the Board to present his case for parole. SDCL 24-15-8. If the Board denied parole, the inmate could apply again in eight months. SDCL 24-15-10.

[¶10.]        Under the new system, the legislature removed the word "discretionary" and defined parole as "the conditional release of an inmate from actual penitentiary custody before the expiration of the inmate's term of imprisonment." SDCL 24-15A-15. The new system requires the Department to set an "initial parole date" for each inmate according to a designated statutory schedule. SDCL 24-15A-32. If the inmate is not released on his "initial parole date," he is entitled to a "discretionary parole hearing at least every two years." SDCL 24-15A-39.

[¶11.]        One obvious difference between the old and new systems is that the new system uses the term "initial parole date," and the old system does not. The old system uses more general terms when referring to an inmate's parole. When an inmate entered the penitentiary, the director was required to calculate "the date when the inmate will be eligible for consideration for parole." SDCL 24-15-3. Calculating when "[a]n inmate [was] eligible for parole" generally depended on whether he was entitled to good time; whether the felony was his first, second, third or more; whether sentences were consecutive or concurrent or whether the felony was committed while an inmate. SDCL 24-15-5, -6,-7, -8. Under the new system, the "initial parole date" is key to an inmate's release on parole. If the inmate substantially complies with an individual program directive and submits a parole release plan, the inmate will be released on parole on the "initial parole date" as

long as he agrees to the conditions of supervised parole. SDCL 24-15A-34 through SDCL 24-15A-38. If the inmate does not meet the requirements for release, the Board sets "a subsequent discretionary parole hearing." SDCL 24-15A-39. Thus an "initial parole date," as it is defined and relied upon for parole release under the new system, was absent under the old system. Consequently, "the date when the inmate w[as] eligible for consideration for parole" under the old system is not the same as "the initial parole date" under the new system.

[¶12.] The difference is highlighted by the language of SDCL 24-15A-19 wherein the legislature specifically used the two different terms and directed that the "initial parole date" for felonies under the new system shall be set by adding the time to serve to "the parole eligibility date" of the old system. The term "parole eligibility date" encompasses more than just the first date an inmate could have been considered for parole. In fact, Santema had several parole eligibility dates while serving his pre-1996 sentence. He had his original date at which he was not paroled and subsequent eligibility dates at which he was paroled, then subsequent eligibility dates after his parole was revoked. He was first eligible for parole consideration in 1995. He was not paroled until 2003, then, was subsequently revoked in 2004. The most recent date for consideration for parole on his pre-1996 sentence, after parole revocation, was March 2005.

[¶13.] Technically, Santema had no "initial parole date" for his pre-1996 felonies since that term was not used in the pre-1996 parole system statutes. If we were to agree with Santema's interpretation of SDCL 24-15A-19, we would have to equate the new system's term "initial parole date" with the old system's term

#24231

"parole eligibility date." The wording of the statutes and the differences of the two systems do not support equating the two terms.

[¶14.] Santema's interpretation of the statute, in effect, would disregard his prior parole violations and revocations with no consequence or effect on his parole eligibility. It is unlikely this was the legislative intent. The plain meaning and common sense interpretation of the statutory language directs that a parole eligibility date would be a date subsequent to his revocation, not some elapsed original date. "We will not construe a statute to arrive at a strained, impractical, or illogical conclusion." Hoeft v. South Dakota Bd. of Pardons & Paroles, 2000 SD 88, ¶9, 613 NW2d 61, 63 (citation omitted). Thus, Santema's "time to serve" (twelve years, four months and twenty-four days) was correctly calculated by adding the time to his "next" current, revised "parole eligibility date." Ultimately, the Department set his "parole eligibility date" for April 2006, the date of his good time release, because he had waived review of parole eligibility originally set for March 2005. Based on the plain language of the statute, the Board correctly determined Santema's "parole eligibility date."

[¶15.] Affirmed.

[¶16.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

-8-