#25076-a-SLZ

**2009 SD 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ESEQUIEL ACEVEDO,                           Appellant,

     v.

SOUTH DAKOTA BOARD
OF PARDONS AND PAROLES,              Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GLEN A. SEVERSON
Judge

\* \* \* \*

JASON W. SHANKS of
May & Johnson, P.C.
Sioux Falls, South Dakota             Attorneys for appellant.

LAWRENCE E. LONG
Attorney General

MAX A. GORS
Assistant Attorney General
Department of Corrections
Pierre, South Dakota              Attorneys for appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 27, 2009

OPINION FILED **06/17/09**

#25076

ZINTER, Justice

[¶1.]        Esequiel Acevedo was sentenced to two years in the penitentiary for failure to register as a sex offender.  He was subsequently released and placed on parole.  After allegedly violating two conditions of his release, the Board of Pardons and Paroles (Board) revoked his parole.  Acevedo appeals raising issues regarding the burden of proof applicable in parole revocations, the sufficiency of the evidence, and the time in which he would next be eligible for parole.

*Facts and Procedural History*

[¶2.]        On May 28, 2008, Acevedo was released from the Sioux Falls penitentiary and placed on parole.  On the same day Acevedo traveled from Sioux Falls to Rapid City, met with his parole agent, John Clemens, and signed a Parole Board Supervision Agreement.  Condition 13a of the Agreement prohibited Acevedo from purchasing, possessing, or consuming any beverage containing alcohol.  Condition 13f prohibited Acevedo from using, viewing, purchasing, or possessing any form of pornography.

[¶3.]        After meeting with Clemens, Acevedo went to the Rapid City Police Department where he picked up what has been described in the record as his "evidence bag."  Acevedo then went to the courthouse and picked up what have been described as his "court clothes."  After leaving the courthouse, Acevedo rented a motel room and placed his clothes and the evidence bag in the room.  He then went to a friend's home for supper and admittedly drank three and one-half cans of beer.  Sharon Tail arrived at some point in the evening, and Acevedo and Tail walked back to Acevedo's motel room.

-1-

[¶4.]        Later that same evening, Clemens conducted a random check of Acevedo at his motel.  Clemens knocked and announced that he was a parole agent.  Because Acevedo would not open the door, Clemens called Acevedo from the hotel office and asked him to open the door.  Acevedo initially resisted but ultimately complied.  According to Clemens, Acevedo's breath smelled strongly of alcohol.  A portable breath test revealed a blood alcohol concentration of .16 percent alcohol by weight.  Acevedo admitted to drinking three and one-half cans of beer.  A search of Acevedo's room revealed a full 40-ounce bottle of malt liquor.  A videotape marked with an "X" was also found in his evidence bag.  Clemens testified that he asked Acevedo if he knew whether the videotape was pornographic, and Acevedo replied that the videotape "contains lesbian pornographic material."  Acevedo was placed in custody for alleged parole violations involving the consumption of alcohol and the possession of pornography.

[¶5.]        The Board held a revocation hearing on August 12, 2008.  The videotape was received into evidence.  Acevedo testified that he assumed the tape was pornographic because it had an "X" on the label.  Clemens testified that he had viewed the videotape and it was pornographic.  Clemens further testified regarding the evidence of alcohol possession and consumption.  The Board found, by the "reasonably satisfied" standard, that Acevedo had violated his conditions of release, and it revoked his parole.  In its findings of fact, the Board found:

> The [Board] is reasonably satisfied that Acevedo violated his parole supervision agreement "13a.  I will not purchase possess or consume any beverage containing alcohol, to include beer, wine, and those beverages labeled as 'non-alcohol'.  (Non-alcohol beer, champagne, etc.)" by consuming alcohol to the extent that his blood alcohol content registered .16 on the portable breath

test and by having a full bottle of King Cobra malt liquor in his possession.

The [Board] is reasonably satisfied that Acevedo violated his parole supervision agreement "13f. I will not use, view, purchase or have in my possession any form of pornography or erotica including, but not limited to books, magazines, photographs, films, video tapes, live entertainment or computer internet" by having a VHS video tape of adult pornography in his possession.

The Board concluded:

The [Board] is reasonably satisfied that [ ] Acevedo does not have the ability to live in society without committing antisocial acts. Now, therefore, the [Board] concludes . . . that the [Board] should revoke [ ] Acevedo's parole.

[¶6.] In affirming the Board, the circuit court first concluded that "[t]he burden of proof at a parole revocation hearing is whether the Board is reasonably satisfied that the parolee . . . has violated the regulations or restriction[s] placed upon the parolee by the Board[.]" The court then concluded that "[t]he evidence was sufficient to reasonably satisfy the Board that Acevedo violated his parole" and that "[t]he Board's decision to revoke Acevedo's parole was not an abuse of discretion." Acevedo appeals these conclusions.

*Decision*

[¶7.] Appeals from the Board are governed by SDCL 1-26-37. Austad v. SD Bd. of Pardons & Paroles, 2006 SD 65, ¶8, 719 NW2d 760, 764. "Therefore, '[w]e review questions of fact under the clearly erroneous standard; mixed questions of law and fact and questions of law are reviewed de novo.'" *Id.* (citation omitted). "Matters of discretion are reviewed under an abuse of discretion standard." *Id.*

*Burden of Proof*

[¶8.]        Acevedo argues that the Board and the circuit court erred in applying the reasonably satisfied burden of proof.  This Court has not considered this issue in the context of a pure parole revocation, and Acevedo points out that we have not considered the issue after the 1996 revision of the parole system ("new system" parole), which grants a presumptive right to parole under certain circumstances. *See infra* ¶10.  Acevedo argues that in light of the lack of clearly controlling authority and the new system of parole, we should adopt a preponderance of the evidence burden of proof in parole revocation proceedings.

[¶9.]        The State, relying on closely related probation and suspended sentence revocation cases, argues that the reasonably satisfied burden should be adopted. The State points out that in *State v. Beck*, 2000 SD 141, 619 NW2d 247, we adopted the reasonably satisfied burden for a court's revocation of probation.

> [P]roof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation.  A judge in such proceeding need not have evidence that would establish beyond a reasonable doubt guilt of criminal offenses. All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.

*Id.* ¶7, 619 NW2d at 249.  More to the point, in *Williams v. SD Bd. of Pardons and Paroles*, 2007 SD 61, ¶8, 736 NW2d 499, 501, a case involving the Board's consideration of a parolee's violation of the conditions of his court suspended sentence, we noted that the parole revocation statute only required that the Board be "satisfied" that a condition of release had been violated.

> *SDCL 24-15A-28 governs revocation* or modification *of parole.* That statute provides:

> If the board *is satisfied* that any provision of § 24-15A-27[1]
> has been violated, it may revoke the parole and reinstate
> the terms of the original sentence and conviction or it
> may modify conditions of parole and restore parole status
> . . . .

*Id.* (emphasis added).

[¶10.]     Because the revocation duty in those cases is so similar to the Board's duty in parole cases not involving probation or suspended sentences, *Williams* and *Beck* would suggest that the reasonably satisfied burden of proof should be applied here.  Acevedo, however, argues that the reasonably satisfied burden should not apply to new system parolees.  Acevedo points out that unlike old system inmates who were only entitled to discretionary parole, new system inmates are entitled to parole as a matter of "right."  *See* SDCL 24-15A-38 (providing that the inmate "shall

---

1.     That statute provides:

> The executive director of the board may issue an order to show
> cause why parole should not be revoked if the director or the
> board is *satisfied* that:
>
> (1) A parolee is violating or has violated the regulations or
> restrictions that are placed upon the parolee by the board, the
> department, or the sentencing court;
>
> (2) A parolee has failed to report to the parolee's assigned parole
> agent;
>
> (3) A parolee has failed to answer inquiries made by a parole agent; or
>
> (4) The purposes or objects of parole are not being served.

SDCL 24-15A-27 (emphasis added).

be released from incarceration to parole" if the parolee has reached his or her initial parole eligibility date, has substantively met the requirements of their individual program directive, has agreed to the conditions of supervision, and has an approved parole release plan). Because inmates now have this conditionally presumptive right to be released, Acevedo argues that new system parolees have a greater liberty interest in parole than old system inmates and the probationers considered in our prior cases. Acevedo contends that this greater liberty interest in *entitlement to parole* requires a higher burden of proof for *revocation of parole*. We disagree.

[¶11.] Acevedo fails to recognize that in a revocation proceeding, the inmate has already been released on parole, whether through a presumptive statutory right under the new system or by discretionary grace under the old system. Therefore, the rights and liberties at stake in a revocation proceeding under either system do not involve a potential parolee's *entitlement to parole.* Parole has already been granted, and the issue is the right to remain on that status when faced with an alleged violation of the conditions of release. Thus, the rights and liberties at stake when the Board exercises its revocation responsibility are the same under the new or old system: the Board must determine whether an inmate should be returned to custody because the inmate violated a condition of a suspended sentence under SDCL 23A-27-19[2] or parole under SDCL 24-15A-28. Additionally, Acevedo fails to

---

2. SDCL 23A-27-19 provides in relevant part:

> Any person whose sentence is suspended pursuant to this section is under the supervision of the Board of Pardons and Paroles, except as provided in § 23A-27-18.2. The board is charged with the responsibility for enforcing the conditions imposed by the sentencing judge, and the board retains

(continued . . .)

recognize our observation in *Williams* that SDCL 24-15A-28 governs release on parole, and that statute specifically provides that the Board need only be "satisfied" that a violation has occurred. *See supra* ¶9. Finally, Acevedo fails to recognize that the Supreme Court has concluded that due process only requires the "reasonable grounds" burden, whether the revocation involves discretionary parole or parole as a matter of right. *See* Morrissey v. Brewer, 408 US 471, 485, 92 SCt 2593, 2602, 33 LEd2d 484 (1972).[3]

_____

(. . . continued)

> jurisdiction to revoke the suspended portion of the sentence for violation of the terms of the suspension.

3. The Supreme Court, in adopting a reasonable grounds burden, did so in the context of both discretionary and parole of right systems. The Court applied the "reasonable grounds" burden specifically recognizing that:

> Under some systems, parole is granted automatically after the service of a certain portion of a prison term. Under others, parole is granted by the discretionary action of a board, which evaluates an array of information about a prisoner and makes a prediction whether he is ready to reintegrate into society.

*Morri*ssey, 408 US at 477-78, 92 SCt at 2598.

Consequently, no matter how the inmate attained parole, a parole revocation hearing cannot be equated with a full criminal prosecution. *See id.* at 485, 92 SCt at 2602. Because the revocation of parole is not part of a criminal prosecution, parolees are not entitled to the full panoply of rights given to defendants in criminal proceedings. *Id.* at 480, 92 SCt at 2600. Thus, unlike criminal proceedings, a parolee need not be found guilty beyond a reasonable doubt before having his parole revoked; rather, *Morrissey* concluded that revocation of parole is proper when merely supported by "reasonable grounds." *See id.* at 490, 92 SCt at 2605. *See also* Calahan v. Quarterman, 2008 WL 2123748 *2 (ND Tex) (providing, "[u]nlike a criminal prosecution where the state must prove the elements . . . beyond a reasonable doubt, the burden of proof in a parole revocation hearing is considerably lower. 'All that is required for revocation is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as required by

(continued . . .)

[¶12.]     For these reasons, we see no justification for imposing a higher burden of proof in a parole revocation than the burden this Court has consistently applied to the analogous responsibility for revocation of probation or a suspended sentence. *See Beck*, 2000 SD 141, ¶7, 619 NW2d at 249. *See also Austad*, 2006 SD 65, ¶8, 719 NW2d at 764 (applying the "reasonably satisfied" standard); Amundson v. SD Bd. of Pardons & Paroles, 2000 SD 95, ¶21, 614 NW2d 800, 805 (applying the "reasonably satisfied" standard); Hughes v. SD Bd. of Pardons & Paroles, 1999 SD 44, ¶11, 593 NW2d 789, 791 (noting the "reasonably satisfied" standard); *In re* Brown, 1997 SD 133, ¶8, 572 NW2d 435, 437 (applying the "reasonably satisfied" standard); State v. Tuttle, 460 NW2d 157, 160 (SD 1990) (applying the "reasonably satisfied" standard). In light of this Court's analogous probation/suspended sentence revocation precedent, the "satisfied" language in SDCL 24-15A-28, and the Supreme Court's decision in *Morrissey,* we hold that the "reasonably satisfied" burden of proof applies in parole revocation hearings.

*Whether Acevedo violated his parole*

[¶13.]     Acevedo argues that the Board erred in finding that he violated the conditions of his parole. This requires us to determine whether the Board's findings are clearly erroneous. *Austad*, 2006 SD 65, ¶8, 719 NW2d at 764.

[¶14.]     As previously indicated, Condition 13f prohibited Acevedo from possessing any form of pornography. Acevedo argues that he did not "possess" the

---

(. . . continued)
    the terms and conditions of his release'") (citations omitted); Williams v. Rubitschun, 2005 WL 3050445 *3 (WD Mich) (providing that the "reasonable grounds" standard governs parole revocation hearings).

pornographic videotape because (1) he did not have knowledge that the tape was pornographic, and (2) he did not have the intent to control the videotape. Appellant's Brief, p. 11. The evidence does not support Acevedo's arguments.

[¶15.] There is no dispute that Acevedo controlled the tape because he retrieved it with his other possessions from police custody and placed it in his motel room. With respect to knowledge of the tape's pornographic character, Clemens testified that Acevedo admitted to him at the motel that the videotape contained pornographic material. Acevedo also testified at the hearing that he assumed the tape was pornographic because it had an "X" on the label. "[A]n inference of possession can be established by circumstantial evidence." State v. Hanson, 1999 SD 9, ¶43, 588 NW2d 885, 894 (citing State v. Dickson, 329 NW2d 630, 632 (SD 1983); State v. Winckler, 260 NW2d 356, 366 (SD 1977)). The Board was not clearly erroneous in finding that Acevedo possessed pornography by having the VHS tape of adult pornography in his motel room.

[¶16.] Acevedo argues that he did not violate Condition 13a, which prohibited the purchase, possession or consumption of any beverage containing alcohol. He contends that the bottle of malt liquor was owned by Ms. Tail, and "[o]ther than the mere fact that the bottle [of malt liquor] was in the room, there is no evidence that supports the [finding] that Acevedo owned or purchased [that] alcohol and would have had control over it." Appellant's Brief, p. 15. We need not, however, reach this contention over ownership, possession and control of the malt liquor because Acevedo admitted to consuming three and one-half beers and he had a blood alcohol level of .16 percent. Because consumption was also prohibited under the alcohol

condition, the Board was not clearly erroneous in finding that he violated Condition 13a "by consuming alcohol to the extent that his blood alcohol content registered .16 on the portable breath test."

*Acevedo's new parole review date*

[¶17.] Following the parole revocation on August 12, 2008, the Board set a discretionary parole review date for September 2009, one month after his release date (August 2009). Acevedo points out that a one-year wait for another parole hearing denied him any opportunity for discretionary parole. He contends that this denial was not commensurate with the seriousness of his violations. He does not, however, allege that the Board violated any statute or constitutional right.

[¶18.] In the analogous, discretionary sentencing context, we review the imposition of sanctions under an abuse of discretion standard. State v. Guthrie, 2001 SD 89, ¶5, 631 NW2d 190, 193. *See also* State v. Bonner, 1998 SD 30, ¶10, 577 NW2d 575, 578 (noting "an extremely deferential review" of sentences such that generally, a sentence "within the statutory maximum will not [be] disturbed on appeal") (citing State v. Kaiser, 526 NW2d 722 (SD 1995)). Because sentencing and parole both require the exercise of discretion, we apply the abuse of discretion standard.

[¶19.] In Acevedo's case, his discretionary parole review date was set at one year, one-half of the statutory limit of two years. *See* SDCL 24-15A-29 (providing that "[i]f a parole is revoked, the board shall establish a discretionary parole date[4]

---

4.   The term "discretionary parole date," as provided in SDCL 24-15A-29, means a date when the inmate is considered for discretionary parole under SDCL

(continued . . .)

of not more than two years from the date of revocation"). Additionally, we note that Acevedo was paroled while serving a short, two-year sentence. Within hours of the time he was paroled, he picked up the pornographic videotape, drank three and one-half cans of beer, and was in a motel room with a bottle of malt liquor. We see no abuse of discretion. Acevedo had no right to an earlier review, and considering his conduct, a reasonable Board could have concluded that he needed to spend one year in prison, even though that may have denied him the opportunity to be considered for discretionary parole.

[¶20.]     Affirmed.

[¶21.]     GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, and SABERS, Retired Justice, concur.

[¶22.]     SABERS, Retired Justice, sitting for SEVERSON, Justice, disqualified.

---

(. . . continued)
    24-15A-41 (the old system) as opposed to presumptive parole under SDCL 24-15A-38 (the new system).